Colcock, J.
A motion for a new trial is made in this case, on the following grounds, viz. 1. That the plaintiff’s case rested upon the uncorroborated evidence of one witness, who testified positively to a fact which occurred nearly thirty years ago, when the witness was a girl, viz. to the sale and delivery of the mother of the negroes in dispute; whereas evidence was given on the part of *351 the defendant, that the plaintiff’s intestate acknowledged to the defendant’s witness, a few years before his death, that he had borrowed the mother of the negroes in question, and not purchased her from defendant’s father; and this fact was also acknowledged by the wife of the plaintiff’s intestate, and confirmed by her omiu ting the mother of the negroes in question, when she made out and returned the inventory of her husband’s personal estate, which was done upon her oath, as administratrix. 2. Upon the ground of misdirection of his honor the judge, as in his charge to the jury, he told them that the testimony of Mrs. Brown, the daughter of Baldrick, who gave evidence against her interest, was to be preferred to the acknowledgment of Martin himself, and his wife, as proved by the witness entitled to the highest credit introduced by the defendant. 3. Upon the ground of additional evidence haVing been discovered since tne trial, very important and material to the defence in this case.
As to the first ground, it depends altogether on facts, which it is the province of the jury to decide, and on which, in my judgment, they have correctly decided.
On the second ground, all that the presiding judge could have intended to say, it is presumed, was, that the testimony of the daughter was more circumstantial, and more worthy of credit, than, the other witness. He could not have intended to weigh the testimony in legal scales, for it was not susceptible of this.
On the third ground, I need only say, that this court has uniformly refused to consider this as any ground for a new trial; and in no cáse, which I can conceive of, would I ever grant a new trial on the discovery of parol evidence after the'tríal. I am, therefore against the motion.
Smith, J.
This was an action of trover, for negroes, that had been, claimed by the plaintiff’s intestate, upwards of thirty-two years. The case depended entirely on matters of fact, and the weighing of evidence, which belonged exclusively to the jury? and thejr found a verdict for the plaintiff. I see no reason why that verdict should be set aside. I am, therefore, against the new trial.'
BRevard, J.
From the report of the judges who tried this cause, ! am of opinion, that it turned altogether on the evidence of facts which the jury were authorized exclusively to decide on. In deciding on the facts, the credibility of the witnesses was necessarily involved, and this was a subject entirely for the jury. There was evidence on both sides. íf I had been of the jury, I should *352 probably have been puzzled how to find, and most probably would have found as they did. The motion ought, therefore, to be refused*
Bay, J.
From the report of the presiding judge, it appeared that the deceased, Mr. Martin, intermarried with a daughter of Mr. . Baldrick, the father of defendant, sometime in the year 1776. That a Mrs. Brown, sister of Mrs. Martin, proved that soon after the marriage, Mrs. Martin’s father bought a negro wench, named Nancy, the mother of the negroes, or mulattoes, in question, and sold them to. Mr. Martin, the intestate, for £-1000 old currency, and that they remained in Martin’s possession till the day of his death,. which was some time iu the year 1803 ; that she, Mrs. Brown, saw Mr. Martin pay some money to Mr. Baldrick, his father-in-law,-for the wench, among which was some hard money.
The defence set up by defendant was, that his father only lent the negroes in question to Mr.- Martin ; and that he neither sold them to Mr. Martin, nor gave them to his sister, but loaned them, till he should call for them. For this purpose, he called one Hen-drickson, who swore, that in the year 1792, he heard Mr. Martin-say his father-in-law had only lent him these negroes. Mrs. Hen-drickson, the wife of the last witness, swore that she heard Mrs. Martin, in the year 1798, say, that her father had only lent her the-wench Nancy. Dr. Lynah, was family physician to Martin, and attended the wench when sick. Martin always paid him for his attendance and medicine; always thought she was Martin’s property ; Jacob Martin was very intimate in the family of Martin ; did business for him in his life'time, and for Mrs. Martin, after his death ; never heard him, or Mrs. Martin say, the negroes belonged to Baldrick’s estate ; always thought they were Martin’s, and does not think Martin would have kept negroes in his possession belonging to any one else; he died wealthy, worth $S(),000. The judge further states in his report, that he submitted this case to the jury, to determine from the evidence on which side the scale preponderated, and the jury found for the defendant.
It appears to me, that the jury exercised a very proper discretion in this case in finding a verdict for the defendant. Mrs. Brown? who was a member of the family of old Mr. Baldrick, and who in fact was swearing against her own interest, very clearly proves a sale on the part of Baldrick to his son-in-law, Mr. Marlin, so long ago as the year 1770, and also a possession afterwards till the day of Martin’s death, in 1803, a period of 27 years. This possession is also proved by two other witnesses.
The defence set up in this case, “ that it was a loan,” has, at the *353 first blush, a very questionable aspect; because it is hardly to be presumed, that if the wench, Nancy, had, as alleged, really been loaned to Mr. Martin, when he was first married, and probably in slender circumstances, that Mr. Baldrick, the lender, would, after a considerable number of years had.elapsed,'when, in the meantime, Mr. Martin had greatly increased his pecuniary resources, have left her longer in. his possession} or that Martin}, himself, would have remained under such an obligation to his father-in-law, - when he had no longer any occasion for such a favor.
- Be this, however} as it may, the idea of a loan of negroes to a young married couple, oh their going off to settle and begin the World for themselves, has always, in this country} been very much discountenanced : and in cases, almost without number, where such pretexts have been set up afterwards by parents, or those entitled to- a distributable share of their estates after their decease} ■ such pretended loans have been construed into gifts.
In the present case, if no sale had been proved by Mrs. BroWn from old Baldrick, to his son.iif-law, Martin,_yet his permitting the Wench and her children to go off with the young married couple, so soon after marriage, and their remaining so long in their possession afterwards, would, in my opinion, have been evidence sufficient to warrant the jury in finding a verdict for plaintiff. What degree of credit was given by the jury to fhe testimony of Mr. and Mrs. Hendrickson, is not for me to say. But, allowing that they gave the utmost weight, it was entitled to, still it would amount only to the loose, random declarations of Martin, without end or object# which would never go to deprive him of a vested right. As to the declarations of Mrs. Martin, while under coverture, as to the husband’s right, they were mere babble, which go for nothing, as the law is very clear, that no act or words of her’s would go to affect her husband’s right to the property.
There is, however, another ground in this case which would si-, lence all other claims whatever ; that is, Martinis possessory right. This possession for such a number of years, would, alone, give him an unquestionable claim to the negroes in question. Therefore, upon every ground, 1 think the verdict ought to remain unimpeached, and that the motion should be, rejected,